UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| | |
|---|---|
| TITO IBRAHIM BARSOUM ISHAK,<br>Petitioner/Plaintiff<br><br>v.<br><br>JOHN ASHCROFT, Attorney General;<br>MICHAEL GARCIA, Assistant Secretary of the<br>Bureau of Immigration and Customs Enforcement;<br>U.S. DEPARTMENT OF HOMELAND SECURITY;<br>U.S. BUREAU OF IMMIGRATION AND CUSTOMS<br>ENFORCEMENT;<br>STEVEN J. FARQUHARSON, Interim Director<br>U.S. Bureau of Immigration and Customs Enforcement;<br>Respondents/Defendants | MAGISTRATE JUDGE |

**COMPLAINT FOR DECLARATORY RELIEF
AND FOR AN EMERGENCY STAY OF REMOVAL AND
PETITION FOR WRIT OF HABEAS CORPUS**

The Petitioner/Plaintiff, Tito Ibrahim Barsoum Ishak A78-231-710, brings this action for declaratory relief to protect his rights under the due process clause of the Fifth Amendment to the United States Constitution and under applicable Federal law and to seek review of the decision from the U.S. Immigration Judge and the decisions of the Board of Immigration Appeals ordering his removal from the United States. Petitioner/Plaintiff asks this Court to issue an order on an emergency basis staying his removal from the United States, to issue a writ of habeas corpus, and to order him released immediately from the Bureau of Immigration and Customs Enforcement Security's custody ("ICE"). The Petitioner/Plaintiff challenges the propriety of the orders of the Immigration Judge dated February 27, 2002 and of the orders of the Board of Immigration Appeals dated August 27, 2003 and December 3, 2003 and seeks full review of those orders which violated his constitutional right to a fair and impartial hearing. (Copies of the

1

Oral Decision from the Immigration Judge dated February 27, 2002, the BIA decision dated August 27, 2003 and the BIA decision on the Motion to Reconsider dated December 3, 2003 are attached hereto as Exhibits A, B and C, respectively.).

## JURISDICTION

1.  This action arises under the U.S. Constitution, the Immigration and Nationality Act ("INA"), as amended, 8 U.S.C. Section 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C., Section 701 *et seq.* This Court has Habeas Corpus jurisdiction pursuant to 28 U.S.C., Sections 2241 *et seq.*; Art. I, Section 9, Cl. 2 of the U.S. Constitution ("Suspension Clause"), and the Common Law. The Petitioner has exhausted most of his administrative remedies and was denied a stay of his removal by the U.S. Court of Appeals for the First Circuit in Case Number 03-2736 due, in part, to a procedural issue in his appeal process. This Court may also exercise jurisdiction pursuant to 28 U.S.C., Section 1361 (*mandamus* jurisdiction) and 28 U.S.C. Section 1331, and may grant relief pursuant to Declaratory Judgment Act, 28 U.S.C. Sections 2201 *et seq.* and the All Writ Act, 28 U.S.C. Section 1651.

No District Court has previously addressed the merits of this case and the Petitioner is currently in the custody of the ICE. The Petitioner has been detained by the ICE since December 18, 2003 at the Bristol County Prison in Dartmouth, Massachusetts and the Respondents intend to remove him from the United States on January 24, 2004 as indicated on its Notice filed with the U.S. Court of Appeals in docket number 03-2736, a copy of which is attached hereto as Exhibit D.[1]

---

[1] In order to facilitate the Court's review of the issues brought forward in this Petition the Petitioner is attaching the following Exhibits: Exhibit E is a true and accurate copy of the Transcript from the Petitioner's hearing in the U.S. Immigration Court; Exhibit F is a true and accurate copy of the Petitioner's Application for Political Asylum and attached Affidavit marked as Exhibit 3 at the Petitioner's hearing in the Immigration Court; and Exhibit G is a

## VENUE

2. Venue lies in the United States District Court District of Massachusetts, the judicial district where the decision from the Immigration Judge was made, where the most recent action in attempting to remove the Petitioner was taken and where the Petitioner lives and is detained, and the location of the Respondents, ICE Interim Director and the Department of Homeland Security who may enforce the final order of removal. 28 U.S.C. Section 2241 *et seq.* and Section 1391.

## PARTIES

3. Petitioner/Plaintiff is a native and citizen of Egypt, who last entered the United States as a tourist on June 23, 1999. Prior to being detained by the CIS the Petitioner/Plaintiff resided at 159 Cornell Street, Roslindale, Massachusetts.

4. Respondent/Defendant, **John Ashcroft**, is being sued in his official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws, pursuant to 8 U.S.C., Section 1103, and he possesses extensive discretionary powers to grant certain relief to aliens.

5. Respondent/Defendant, **Michael Garcia**, is being sued in his official capacity as the Assistant Secretary of the Bureau of Immigration and Customs Enforcement. In his capacity, he is also responsible for the administration of the immigration laws and has executive authority over the ICE.

6. The Respondent/Defendant **Department of Homeland Security and the Bureau of Immigration and Customs Enforcement** are the agencies responsible for enforcing the

---

true and accurate copy of the Assessment Memo from the DHS Asylum Officer marked as Exhibit 6 by the Immigration Judge at the Petitioner's hearing in the Immigration Court.

Immigration and Nationality Act ("INA"). The Department of Homeland Security will be referred to hereinafter as the "DHS."

7. Respondent/Defendant, **Steven J. Farquharson**, is the Interim Director of the U.S. Bureau of Immigration and Customs Enforcement (hereinafter "ICE") for the District of Massachusetts, and is charged by law with the statutory duty of administration and enforcement of all the functions, powers and duties of the ICE.

8. The Appellant is a native and citizen of Egypt who entered the United States on June 23, 1999 as a tourist. On July 21, 2000 the Appellant applied for political asylum with the DHS. On September 21, 2000 the DHS conducted an interview of the Appellant on his application for political asylum. The DHS denied the Appellant's application for political asylum and referred his case to the Immigration Court in Boston, Massachusetts for further proceedings.

9. By order dated February 27, 2002 the Immigration Judge (Ragno, J.) denied the Appellant's applications for political asylum, withholding of removal and relief under the Convention Against Torture. On March 18, 2002, the Appellant filed a timely appeal of the Judge's decision with the Board of Immigration Appeals ("BIA").

10. By notice dated August 27, 2003, the BIA dismissed the Appellant's appeal. On September 26, 2003, the Appellant filed a timely Motion to Reconsider with the BIA seeking reconsideration of the BIA's August 27, 2003 decision. However, the Petitioner's attorney at the time did not file a Petition for Direct Review with the U.S. Court of Appeals for the First Circuit within 30 days from the date of the BIA's decision.

11. By decision dated December 3, 2003, the BIA denied the Appellant's Motion to Reconsider. On December 24, 2003, the Appellant filed a Petition for Direct Review with the U.S. Court of Appeals for the First Circuit in order to contest the BIA's decisions on his case.

The Petitioner requested a stay of his removal from the United States on an emergency basis and by order dated January 13, 2004, the Court of Appeals denied the request due primarily to the fact that the only issue before the court in that case is whether or not the BIA's decision dated December 3, 2003 denying the Motion to Reconsider was proper. (A copy of the Court's decision on the Motion for Stay is attached hereto as Exhibit H).

12. In this Petition for Writ of Habeas Corpus the Petitioner raises issues of constitutional violations to seek redress of the denial of his applications for political asylum, withholding of removal and relief from removal under the Convention Against Torture. The claims brought forth in this Petition are colorable constitutional claims involving the Petitioner's right to a fair hearing and to a decision by the Immigration Judge and BIA detailing their respective reasons for denying the Petitioner's applications for relief. See Saint Forth v. Ashcroft, 329 F.3d 191, 203 (1st Cir. 2003).

13. On or about December 18, 2003, the DHS apprehended the Appellant at his home and is currently detaining the Appellant at the Bristol County House of Corrections. The government has informed the Court of Appeals that it intends to remove the Petitioner from the United States **on January 24, 2004.** The Petitioner, therefore, seeks an order from this honorable court staying his removal from the United States so he can properly contest the BIA's decision. To the extent the request for the stay is not granted, the Appellant will be returned to a country where his life is in danger thereby effectively ending any hope he has of prevailing on his claim to political asylum and, perhaps, any chance he has to prevent persecution he believes he will suffer upon return to Egypt.

14. The Appellant's case involves a claim for political asylum on account of his religion, membership in a social group and political opinion. The Appellant is a Coptic Orthodox

Christian who fears persecution from Muslim Fundamentalists in Egypt. The Petitioner was born and raised in Sohag, Egypt, a predominantly Muslim village. (Tr. P. 9-10; 29). The fact that the Appellant is a Coptic Orthodox Christian who openly practiced his religion in Egypt was uncontroverted and not at issue in his case.

15.  The Appellant testified at his asylum hearing about several major incidents that happened to him and which precipitated his departure from Egypt in fear of his life. The first incident occurred in grade school when the Appellant was subjected to ridicule by his teacher for failure to profess belief in the Muslim religion. The Appellant was treated with contempt and beaten by his teacher because he is a practicing Coptic Christian. (Tr. 12-13). In his last year of high school the Petitioner was beaten by six Muslim youths when he defended his sister from harassment. (Tr. 13-14). When he reported the incident to the police he was put him in jail for three days after the police learned that he was a Christian. (Tr. 14; 47). At a later date in 1996, the police arrested the Petitioner and accused him of murdering his friend who was shot by Muslim fundamentalists while on their way to church. (Tr. 15-17; 24-27; 47-48). The police made a false report in connection with the killing and the Appellant was forced to sign a confession to the killing, but was ultimately released from custody after sixteen days in jail. (Tr. 15-17; 24-27; 41; 47). The Petitioner was arrested for the third time in August, 1998 when he was in his village. The only motivation for the arrest was the fact that the police in the area were arresting known Christians. (Tr. 18-21; 49). 16.   In order to prevail on appeal the Petitioner must show that the BIA's decision is not supported by reasonable, substantial, and probative evidence on the record considered as a whole. <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 481, 112 S. Ct. 812 (1992) A lower court's decision should not be overturned if it is based on substantial evidence. While it is true that deference should be given to the finder of fact, deference is not due where, "findings and

conclusions are based on inferences or presumptions that are not reasonably grounded in the record, viewed as a whole, or are merely personal views of the immigration judge." El Moraghy v. Ashcroft, 331 F.3d 195, 202 (1st Cir. 2003) citing Cordero-Trejo v. INS, 40 F.3d 482, 487 (1st Cir. 1994).

In Moraghy the Court of Appeals vacated the decision of the BIA finding that the Immigration Judge had made several errors of law. The Petitioner in Moraghy was also a Coptic Christian Egyptian who appealed the BIA's decision denying his applications for political asylum, withholding of removal and relief under the Convention Against Torture. In its decision the Court found several flaws in the Immigration Judge's reasoning and methodology in arriving at his decision. "We reject the notion that a State Department country condition report must specifically name a petitioner or his family members to be useful in the analysis of an asylum application. We also reject the notion that an IJ, particularly in the absence of any adverse finding as to the petitioner's credibility, may simply ignore the need to make a finding as to whether petitioner has demonstrated past persecution on account of one of the specified grounds for asylum." Moraghy at 198.

With regard to use of the country condition reports by an immigration judge the court in Moraghy states that the reports should be viewed to, "provide a context for assessing the credibility of a petitioner's account." Id. at 204. However, requiring that the country reports specifically refer to a petitioner or his family members is improper. "To demand that they do so and otherwise eschew any analysis of the evidence is clearly erroneous." Id. Moreover, it is incumbent on an immigration judge to provide a finding regarding whether or not a petitioner has suffered past persecution. Id. at 202, 204.

On the issue of credibility an immigration Judge must, "if he or she chooses to reject

petitioner's testimony as lacking credibility, offer a specific, cogent reason for the IJ's disbelief." Id. at 205 citing Gailius v. INS, 147 F.3d 34, 47 (1st Cir. 1998). The Court in Moraghy remanded the case to the BIA ruling that neither the BIA nor the Immigration Judge made any finding regarding the petitioner's credibility.

The Court in Moraghy also provides guidance to the BIA regarding its review of an Immigration Judge's decision. "We require the BIA to exercise independent judgment, and to state plainly its reasons for granting or denying relief." Id. at 203 citing Chen v. INS, 87 F.3d 5, 7 (1st Cir. 1996). The Court further states, "a reviewing court should judge the action of an administrative agency based only on reasoning provided by the agency, and not based on grounds constructed by the reviewing court." Id.

17. The Immigration Judge's decision in the Petitioner's case is strikingly similar to the decision in Moraghy with one difference that appears, on the surface, critical. In Moraghy, the Immigration Judge made no finding of credibility and no finding of whether or not the incidents described by the Petitioner amounted to past persecution. In this case, however, on page 21 of his decision the Judge states, "I have observed the demeanor of the respondent during the time he has testified in these proceedings and find his testimony to be less than candid, his answers to be rambling, his answers not responsive to the questions asked, and his testimony not credible concerning the reasons for his leaving Egypt and not wanting to return to Egypt. I concur with the asylum officer's assessment as reflected in Exhibit 6 in the record concerning the respondent's credibility." See Exhibit A. For its part the BIA endorsed the Judge's decision where its states at page 2 of its decision, "the Immigration Judge's decision reflects that he merely agreed with the asylum officer's credibility finding, but made his own credibility finding based on his own observations at the merits hearing. (IJ at 17-18, 21-22)." See Exhibit B.

8

Careful review of the entire record before the Immigration Judge and the BIA shows that neither the Judge nor the BIA made a determination of the Petitioner's credibility. In order to see the mistakes made by the Immigration Judge one must review his decision carefully, something the BIA failed to do.

Pages 13-18 of the Judge's decision does nothing more than quote verbatim from the Assessment to Refer from the Asylum Officer. See Exhibit G. In pages 19-21 the Judge finally mentions the Petitioner's hearing testimony, then states on page 21 that he concurs with the asylum officer's decision. The Judge's statement on page 21 is the only mention of the Petitioner's credibility. In fact, the Judge entirely fails to analyze the Petitioner's asylum claim or his reason for denying the application. The Judge's statement that he observed the demeanor of the Petitioner at his hearing does not further describe or detail the specific instances of the Petitioner's story that he did not believe. Rather, the Judge merely endorses, without explanation, the decision of the Asylum Officer as set forth in the Assessment Memo. The BIA's decision citing to pages 17-18 of the Judge's decision clearly shows the lack of review afforded by the BIA. To reiterate, pages 17-18 of the Judge's decision is merely a verbatim recitation of the Assessment Memo. The Immigration Judge makes no analysis whatsoever of the Petitioner's credibility and the BIA's decision is not entitled to any deference where its decision indicates a clear lack of understanding of the record as shown herein.

The Immigration Judge's cross examination of the Petitioner fails to elicit information probative on the Petitioner's fear of persecution. Rather, the Judge spent a considerable amount of time chastising the Petitioner regarding his means of obtaining a tourist visa to enter the United States. Rather than probe the Petitioner regarding the core issues of his asylum claim, the Judge engaged in lengthy cross examination of the Petitioner on collateral issues. Such

examination is indicative of the unfair hearing the Petitioner received and the BIA's decision did nothing to address or remedy that legal error.

18.     There are several other similarities between the decision in <u>Moraghy</u> and the decision in the Petitioner's case. In <u>Moraghy</u> the court took issue with the Judge's improper use of the country conditions report and his requirement that the reports specifically mention the Petitioner. Moraghy at 202-204. In this case, the Judge states, "Group Exhibit 4 in the record contains the Profile of Asylum Claims and Country Conditions for Egypt from the Department of State for December 1997; Country Reports and Human Rights Practices for Egypt from the Department of State dated February of 2001; and an article concerning Christianity in Islam in the 20th century in Egypt. **A review of those documents does not refer to the respondent nor any members of the respondent's family.**" <u>See</u> Exhibit A, page 13. The BIA does nothing in its decision to remedy the Judge's misuse of the Country Reports.

In <u>Moraghy</u>, the Court states, "The IJ concluded that a similarly-situated person would not fear persecution, nor would persecution be likely if El Moraghy were to return to Egypt." <u>Moraghy</u> at 202. In this case the IJ makes a similar conclusion. "A reasonably person similarly situated at the respondent based on this record I find would not fear persecution of have a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion, nor was it stated in the respondent's application, documentation and support thereof, and the respondent's testimony in these proceedings." <u>See</u> Exhibit A page 23. Neither the Immigration Judge nor the BIA make any attempt to specify the reason for such a statement. Accordingly, the basis for the Judge's decision cannot be determined either from review of the oral decision or the BIA's decision.

19.     The only basis for the BIA's decision that appears independent from the Immigration

Judge's decision is that statement at page 2 where the court says, "Notwithstanding the respondent's arguments on appeal, we find that the respondent's testimony regarding his arrest and false accusation is too implausible and has too many unresolved inconsistencies to establish his eligibility for asylum." See Exhibit B, page 2. While this may appear to be an independent review of the IJ's decision, the BIA appears to rely on the Assessment Memo to find inconsistencies in the Petitioner's testimony. In fact, the Petitioner was consistent throughout his immigration process in that he admits he signed a confession to his friend's murder, but the confession was coerced and not true. See Exhibit E page 41, Exhibit F and Exhibit A page 9. The Immigration Judge and the BIA failed to analyze the Petitioner's testimony and did not provide any explanation for not believing the Petitioner's statements regarding his friend's death. The failure to properly analyze the testimony and to articulate the basis for the decision is critical in this case and the reason why the Court should grant the Petitioner's request for stay of his removal.

20. For the following reasons, this honorable court should grant a stay of the Petitioner's removal on an emergency basis:

**A.   There is a strong likelihood that the Petitioner will prevail on the merits of the legal issues raised in his Petition for Direct Review.**

The Immigration Judge denied the Appellant's claim primarily because he found the Appellant' testimony to be, "less than candid" and that a reasonable person similarly situated as the respondent would not fear persecution in his country. (Oral Decision of the Immigration Judge – pages 21-23). As stated above, the Judge simply concurred with the Asylum Officer's Assessment Memo and made no real finding regarding the Petitioner's credibility as required. Additionally, it is also clear from the Petitioners' testimony at his Individual hearing that he was

persecuted on many occasions in his life because of his religious beliefs. However, the IJ and the BIA failed to make any finding regarding whether or not the incidents described by the Petitioner amounted to persecution.

The Petitioner's testimony regarding incidents in Egypt that precipitated his departure from the country was not contested by the government. During the course of his hearing in the Immigration Court, there were occasions when under rigorous cross exam from the Immigration Judge the Respondent was not able to provide clear and convincing answers to the Judge's questions. Those instances were created, in part, by the Judge's cross examination and intimidating presence in the proceedings. Moreover, much of the transcript is indiscernible and the Petitioner's responses to the Judge's questions cannot be reviewed since the record is incomplete. The core of the Appellant's claim was not challenged by the government or the Judge and the simple fact remains that the Appellant is a practicing Coptic Orthodox Christian who was detained in Egypt, beaten and falsely charged with murdering his friend solely because he was identified by the authorities as a Coptic Orthodox Christian. On those facts alone, at this juncture of the proceedings on appeal, the Appellant has shown a reasonable likelihood of success on the merits of his claim for political asylum.

**B.     Irreparable Harm Will Occur if the Stay is Not Granted.**

The Petitioner claims fear of persecution if returned to Egypt. To the extent his claim is approved by this court after review, nothing could be more irreparable than sending him to a country where he will be killed upon his return. To do so would deny him the final opportunity to be heard on his very serious case. The fact that no person can be certain of their fate if forced to return to their country of origin should not preclude a finding of irreparable harm to this Petitioner.

In the event the Stay of Removal is not granted, the Petitioner will suffer irreparable harm in that he may not be alive to tell more of his situation. Were it not for the erroneous ruling of the Immigration Judge and the Board of Immigration Appeals, the Petitioner would be allowed to stay in the United States free from persecution on account of his religious and political beliefs. The Petitioner's claim should not be taken lightly and he should be allowed every opportunity to present his case in the U.S. Court system before being sent to a country where he fears for his life.

If the DHS removes the Petitioner to Egypt, his life would be in danger as he argued in his application for political asylum and he will not be allowed to return to the United States for many years. In fact, should the Petitioner be removed from the United States there can be no guarantee that he will be allowed to re-enter the United States at any time in the future nor can there be any guarantee that he will not be killed as he legitimately fears. At least while he is in the United States he will have the opportunity to be heard on the issues in his case.

C. **The potential harm to the Petitioner if the stay is not granted far outweighs any harm to the government.**

In this case, the only harm to any party in not granting the stay of removal is to the Petitioner. The only possible harm to the government in granting the stay is the costs associated with incarcerating the Petitioner. The Petitioner has no criminal record and is not a danger to society nor could any reasonable person argue that the Petitioner poses a risk of flight from the DHS. The Petitioner was granted voluntary departure by the Immigration Judge which shows that he is not a danger to society and could be allowed to leave the United States at his own expense.

The Petitioner's life is on the line in this case. Nothing could be more serious. Clearly the

harm to the Petitioner in sending him back to Egypt where he fears persecution outweighs any harm the government would suffer if the stay is granted. Since this case must proceed through the final stage of the legal system, the only just thing to do is stay the Petitioner's removal pending the outcome of the issues and to order the Petitioner's release from DHS custody during such time as it takes to resolve the issues presented by the Petitioner on appeal.

### D.   Granting the stay is in the public interest.

There is a strong public policy in preventing the United States and other countries from sending people to places where they will be subjected to persecution or torture. In fact, such actions are the very goal of the Convention Against Torture. While the merits of the Petitioner's case are being litigated, it is in the interest of the public to allow the Petitioner every opportunity to avail himself of our legal system. Simply sending this Petitioner to a country where he fears for his life is not in anyone's interest and must be prevented. In this case, the evidence clearly shows the Petitioner's asylum claim requires further evaluation. Here, it is in all parties interests to stay the Petitioner's removal from the United States so this court can once and for all review the merits of his asylum claim. By granting a stay of the Petitioner's removal, this Court would be maintaining the status quo so important factual and legal issues can be resolved.

**WHEREFORE**, Petitioner respectfully prays this Honorable Court to:

a.   Assume jurisdiction over this matter;

b.   Issue an immediate Stay of Removal pending the resolution of this Petition thereby preventing the Respondents from removing the Petitioner from the United States pending further order of the Court in these proceedings;

c.   Declare the Order of the Board of Immigration Appeals in error and reverse the decision by either remanding the case to the Immigration Court in Boston, Massachusetts for

further proceedings on the Petitioner's eligibility for relief from removal or by granting the Petitioner's application for political asylum;

d. Award reasonable costs and attorney's fees; and

e. Grant such further relief as to the Court deems just and proper.

**Respectfully submitted,
Tito Ibrahim Barsoum Ishak
By his attorneys,**

Anthony Drago, Esq.
Cynthia Vega, Esq.
Anthony Drago, Jr., P.C.
35 India Street
Boston, MA 02110
(617) 357-0400